Midland Oil Company, Appellant, v. Packers Motor Transport, Inc., Defendant. Advance Transportation Company, Appellee.

**Gen. No. 36,983.**

452

Opinion filed November 27, 1934.

Rothman & Mintz, for appellant.

Mayer, Meyer, Austrian & Platt, for appellee; Frederic Burnham, David F. Rosenthal and Jacob X. Schwartz, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

This is an appeal by Midland Oil Company, a corporation, plaintiff in an attachment-garnishment proceeding, from a judgment against the garnishee, Advance Transportation Company, a corporation, in the sum of $205.

On July 19, 1932, plaintiff commenced an attachment-garnishment suit against Packers Motor Transport, Inc., a corporation (hereinafter called defendant), as defendant, and Advance Transportation Com-

pany, a corporation (hereinafter called garnishee), as garnishee. The attachment issue was tried without a jury, the attachment was sustained, and there was a finding and judgment against defendant in the sum of $5,236.24. Defendant prayed an appeal but never perfected it. In the answer filed by garnishee to interrogatories it admitted it was indebted to defendant in the sum of $205. Plaintiff contested garnishee's answer. In a trial by the court on plaintiff's contest of the said answer there was a finding against garnishee on its answer in the sum of $205, and judgment was entered for that sum for the use of plaintiff. Plaintiff contends that the trial court erred in not entering judgment for $5,253.45 for the use of plaintiff.

Garnishee has filed a motion in this court "to strike from the bill of exceptions and the abstract filed in the above cause, that portion of the bill of exceptions from pages 50 to 124, both inclusive, and that part of the abstract of record from pages 7 to 18, both inclusive." It appears that the bill of exceptions from pages 50 to 122 relates to certain proceedings before Judge Gray upon the attachment issue, and that pages 123 and 124 relate to proceedings before Judge Greer upon the same issue. These parts of the bill of exceptions are not certified by said judges, and no excuse is shown for the absence of such certification. The garnishment issue was tried by Judge McKinlay, and it appears that after the trial and judgment, but before the presentment of the bill of exceptions, Judge McKinlay resigned as an associate judge of the municipal court, and the instant bill of exceptions was presented to Judge Brooks, who certified the same as acting chief justice of the municipal court. There are incorporated in the bill of exceptions signed by Judge Brooks what purport to be stenographic reports of alleged proceedings had before Judge Gray and Judge Greer in the attachment proceedings. As-

suming, for the sole purposes of this motion, that duly certified bills of exceptions in the proceedings before Judges Gray and Greer in the attachment matter might have been properly incorporated in the instant bill of exceptions, nevertheless, Judge McKinlay, if he had continued on the bench, would have had no power to incorporate in the bill of exceptions the stenographic reports of the alleged proceedings before Judges Gray and Greer, nor would he have had the power to certify to the said proceedings unless there appeared in the record some legal reason for the failure of those two judges to certify to the respective portions of the attachment proceedings which were heard before them, and the record is barren in that regard.

"Where different parts of the case are heard by two judges, each must authenticate the proceedings by bill of exceptions as to those matters heard by him." (*Taylorville Sanitary District v. Nelson,* 334 Ill. 510. See also *Staunton Coal Co. v. Menk,* 99 Ill. App. 254, and *People v. Rice,* 238 Ill. App. 460.) It is settled law in this State that where a bill of exceptions is signed by a judge other than the one who heard the proceedings covered thereby, a legal excuse for such procedure must appear in the record, otherwise the bill will be stricken. Plaintiff makes but a feeble effort in opposition to the instant motion. It argues that in determining the motion we must give force to the stipulation between plaintiff and garnishee "that the original bill of exceptions and stenographic report filed in the above entitled cause, instead of a copy thereof, shall be certified and incorporated in the transcript of record in said cause." This stipulation was signed on July 14, 1933, and the bill of exceptions was not presented to Judge Brooks until July 18, 1933. We find nothing in the stipulation that authorized plaintiff to put into the bill of exceptions in the gar-

nishment proceeding the alleged proceedings before Judges Gray and Greer, and in this connection it must be remembered that garnishee was not a party to the attachment proceedings. Upon the trial of the garnishment issue the plaintiff made no effort, by motion or otherwise, to make the stenographic reports of the attachment proceeding a part of the record in the garnishment proceeding. If any alleged evidence in the attachment proceeding would have been competent and relevant in the garnishment proceeding, there was a proper way to present it. We find no merit in the contention of plaintiff that garnishee was guilty of laches in not making the motion to strike at an earlier day. The instant motion of garnishee must be granted and it is accordingly so ordered.

Plaintiff contends that "the sale herein is fraudulent and void as to the plaintiff for failure to comply with the Bulk Sales Act." In support of this contention plaintiff relies upon the following part of section 1 of the Bulk Sales Act (Cahill's Ill. Rev. St. 1933), ch. 121a, par. 1:

" . . . That the sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business shall be fraudulent and void as against the creditors of the said vendor, . . . unless the said vendee shall at least five days before taking possession of said goods and chattels and at least five days before the payment or delivery of the purchase price, or consideration of any evidence of indebtedness therefor, in good faith, deliver or cause to be delivered or send or cause to be sent personally or by registered letter properly stamped, directed and addressed, a notice in writing to each of the creditors of the vendor named in said

statement or of whom the said vendee shall have knowledge, of the proposed purchase by him of the said goods and chattels and of the price, terms and conditions of such sale . . . ."

The stipulation of facts reads as follows:

"It is hereby stipulated by and between the plaintiff Midland Oil Company, a corporation, and the garnishee, Advance Transportation Company, a corporation, parties to the above entitled suit, by their respective attorneys, that for the purposes of the plaintiff's contest of the answer of Advance Transportation Company as garnishee, the following shall be taken as facts in the case and that this stipulation may be introduced in evidence by either of the parties hereto and shall be received as evidence upon the hearing on the contest of said garnishee's answer:

"1.   That on July 12, 1932, a written contract dated July 12, 1932, was entered into between Packers Motor Transport, Inc., an Illinois corporation, as Seller, and said Advance Transportation Company, a corporation, as Purchaser, and James A. Hannah, as a party to said contract. An Original of said contract is hereto attached marked Exhibit 'A' and by reference made a part hereof.

"2.   That on July 12, 1932, contemporaneously with the execution of the purchase contract above referred to, said Advance Transportation Company received from said Packers Motor Transport, Inc. an affidavit dated July 12, 1932, signed by James A. Hannah, as president of the Seller corporation, purporting to be in compliance with the Bulk Sales Law of the State of Illinois and setting forth what is therein stated to be a full, accurate and complete list of the creditors of said Packers Motor Transport, Inc., their addresses and the amounts owing to each of said creditors as of the date of said affidavit. The name of Midland Oil Company, the Plaintiff herein, is in said affidavit

shown as a creditor for the sum of $4266.53. Said affidavit is attached hereto marked Exhibit 'B' and by reference thereto herein made a part hereof.

"3. That on July 13, 1932, the Purchaser in good faith caused to be sent by registered letter, properly stamped, directed and addressed, a notice in writing to each of the creditors (including Midland Oil Company), of whom the purchaser had knowledge or were named in the said affidavit of the Seller by its president. That the said notice in writing was in words and figures as shown on copy thereof attached to the affidavit of Herman E. Friedrich, an attorney for the Seller, which affidavit together with the list thereto attached, is hereto attached marked Exhibit 'C' and by reference thereto herein made a part hereof.

"4. That the notice so sent to Midland Oil Company, the plaintiff herein was mailed by registered mail on Wednesday, July 13, 1932, addressed to plaintiff at the address given in the said affidavit of said James A. Hannah, arrived in Chicago on July 14, 1932, and was received by Midland Oil Company on July 15, 1932.

"5. That the said attachment suit in which said Advance Transportation Company was served as garnishee was begun on July 19, 1932, and that Advance Transportation Company as garnishee was served on July 19, 1932 at 11:30 A. M.

"6. That except as to the facts herein set forth, which are to be taken as admitted by the parties hereto for the purposes of the above suit, either of the parties hereto shall have the right to introduce any other admissible evidence bearing upon the issues involved."

Exhibit A, attached to the stipulation and by reference made a part thereof, is a contract dated July 12, 1932, between defendant as seller and garnishee as purchaser, and James A. Hannah (hereinafter referred to

as Hannah), whereby, in consideration of one dollar and other valuable considerations and the mutual agreements contained, the parties agree, in substance, as follows:

"Seller does hereby sell, transfer, set over and assign all its right, title and interest in and to certain equipment located at 4125 Emerald Avenue, Chicago, Illinois, listing eight semi-trailers, certain office furniture and equipment, also listing certain office equipment located in its Milwaukee office, and in its Indianapolis office, also a certain account receivable in the sum of $450.00.

"Seller represents said property is free and clear of liens and encumbrances except such as are herein specifically assumed by the purchaser and seller warrants its title to said property.

"Seller agrees and does assign all of its right, title and interest in and to its certain contracts with so-called owner-drivers.

"Seller does hereby assume and pay any amounts due and owing to any of said owner-drivers as of midnight, July 15, 1932, and shall be entitled to collect and receive any amounts due and owing from said owner-drivers. That as of midnight, July 15, 1932, said buyer shall begin its operations under said several contracts with the owner-drivers.

"Purchaser agrees to pay the sum of $3,000.00 in cash and assumes and agrees to pay the following notes payable, listing 11 creditors, aggregating the sum of $8,716.91. Buyer agrees to indemnify and save harmless the seller from all loss, payment or damage of any kind by reason of the failure of the said purchaser to pay said notes.

"Seller and Hannah jointly and severally agree not to engage in the trucking or hauling business for a period of two years from date of this contract within certain named states.

"Parties agree that for the purpose of prorating adjustable items respecting rent, salaries, and earnings, midnight of July 15, 1932, is hereby designated as the time for prorating the same, that all revenues and expenses of any truck dispatched before such time and until it shall have returned to Chicago premises and completed its cycle shall accrue to the seller and all revenue thereafter accruing shall belong to the purchaser; that the rent for the month of July, 1932, the garage in Chicago and the offices at Indianapolis and Milwaukee has been paid and will be prorated as of July 15, 1932, and the seller hereby assumes and agrees to pay all bills incurred prior to midnight of July 15, 1932. In the event as of midnight, July 15, 1932, seller for any reason is unable to make complete delivery of title and possession to all of the property and chattels described herein, then at the option of the purchaser this contract shall be null and void and of no force and effect.

"It is understood that any amount due from such proration to either of the parties shall be payable in cash immediately after July 15, 1932.

"Parties agree to notify the Commonwealth Edison Company and the Illinois Bell Telephone Company, the Indiana Bell Telephone Company and the Wisconsin Bell Telephone Company to render final bills to the seller as of midnight, July 15, 1932, and to bill purchaser for all charges thereafter.

"Purchaser assumes and agrees to pay all rents for the aforesaid garage and Indianapolis and Milwaukee offices accruing after midnight, July 15, 1932. Seller agrees to pay salaries and wages of all employees (not including owner-drivers) to and including July 16, 1932.

"It is understood and agreed that the seller does hereby sell, assign, transfer and deliver to the purchaser the business and good will of said seller in and to the business now operated by the seller.

"Seller represents and guarantees that the list of creditors delivered to the purchaser concurrently herewith is a true, accurate and complete list of all creditors of the seller as of date hereof.

"In consideration of $1.00 and other good and valuable consideration Hannah does hereby guarantee that the representations, covenants and agreements hereinabove set forth with reference to liens and mortgages against said property are true and agrees to indemnity and save harmless the purchaser from all claims, demands, damages or loss of any nature which may accrue to or be suffered by the purchaser by reason of any liens or incumbrances on said property or chattels.

"Parties mutually agree that the payment of the cash by the buyer shall be made to Bottum, Hudnall, Lecher, McNamara & Michael, Milwaukee, Wisconsin, and executed copies of this contract together with assigned owner-driver contracts shall be deposited by the seller with Howard A. Brundage, Chicago, Illinois, who shall be escrowees for the parties hereto to be held until Tuesday, July 19, 1932, at which time the exchange of money and contracts between said escrowees shall be made and purchaser shall take possession of the property and chattels above listed.

"Parties mutually agree that within said five-day period the seller will furnish to the purchaser a certified copy of a resolution of its Board of Directors authorizing the execution of this contract, also a certified copy of a resolution of its stockholders approving and ratifying said sale and purchaser shall furnish a certified copy of a resolution of its Board of Directors approving and authorizing the execution of this contract.

"Contract signed by Packers Motor Transport, Inc., Advance Transportation Company and James A. Hannah."

Exhibit B, an affidavit of James A. Hannah, president of defendant, recites:

"  .  .  .  that he is the President of Packers Motor Transport, Inc., an Illinois corporation, which is this day selling certain of its property to Advance Transportation Company, a Wisconsin corporation.

"Affiant further states that to the best of his knowledge and belief, the attached list is a full, accurate and complete list of the creditors of said Packers Motor Transport, Inc., their addresses and the amounts owing to each as near as may be ascertained, as of the date hereof; and that this affidavit is furnished in compliance with the Bulk Sales Act of the Statutes of the State of Illinois."

Attached to this affidavit is a list of 54 accounts payable creditors aggregating the sum of $11,776.44, including the name of plaintiff as a creditor in the sum of $4,266.53; also 14 notes payable creditors aggregating the sum of $10,516.91. Exhibit C, an affidavit of Herman E. Friedrich, recites:

"IN RE PURCHASE OF ASSETS OF PACKERS MOTOR TRANSPORT, INC., AN ILLINOIS CORPORATION, BY ADVANCE TRANSPORTATION COMPANY, A WISCONSIN CORPORATION.

"STATE OF WISCONSIN ⎱ ss.
 MILWAUKEE COUNTY ⎰

"HERMAN E. FRIEDRICH, being first duly sworn, on oath deposes and says that he did on this 13th day of July, 1932, forward by registered mail deposited in the post office of the United States at Milwaukee, Wisconsin, on said date, in an envelope properly sealed and addressed to each and every of the following alleged creditors of Packers Motor Transport, Inc., at the addresses therein respectively noted, per list attached hereto, marked Exhibit 'A,' with postage duly

prepaid to cover both general and registered postage, an identical, full and complete copy of the within and attached notice to creditors, marked Exhibit 'B,' one said notice in each and every of said envelopes; that this affidavit is made for the purpose of showing that the revised statutes of the State of Illinois for 1932, particularly Section 1, Chapter 121-A thereof, have been and thereby were fully complied with.''

Attached to this affidavit is a list of 66 accounts and notes payable creditors, which includes plaintiff's name, and a notice to creditors of defendant, as follows:

"July 12, 1932.

"To the creditors of Packers
Motor Transport, Inc.:

"You and each of you are hereby notified that the undersigned, pursuant to a certain contract between Packers Motor Transport, Inc. and the undersigned, proposes to purchase the good will, business and a major portion of the goods and chattels of said Company upon the payment of Three Thousand Dollars ($3,000) in cash and the assumption of certain indebtedness, aggregating Nine Thousand Five Hundred Sixteen and 91/100ths Dollars ($9,516.91) and the assumption of all of its contracts with its owner drivers. Said company agrees not to enter into the same line of business it is now in in competition with the undersigned for a period of two years.

"This notice is given to you pursuant to Section One, Chapter 121-A, of the Illinois Revised Statutes.

"Very truly yours,

"Advance Transportation Company,

"By G. J. Lindner, Secretary.''

Plaintiff contends "that it was the intention of our legislature to give creditors not less than five days within which to protect their interest. The time, there-

fore, should be figured, not from when the notice is mailed to the creditors, but from when the creditors received the notice. In this case the notice was received by the plaintiff on July 15, 1932, as stipulated by the parties, and if the sale was closed on July 19th, as contended by the garnishee, it would give the plaintiff four instead of five days' notice.'' Garnishee contends that the statute does not absolutely require a delivery of the notice to creditors five days before payment is made to the seller, but that it provides, in the alternative, that the ''vendee shall at least five days before the payment . . . of the purchase price . . . in good faith . . . send or cause to be sent . . . by registered letter, properly stamped, directed and addressed, a notice in writing . . . .'' The stipulation of facts states ''that on July 13, 1932, the Purchaser in good faith caused to be sent by registered letter, properly stamped, directed and addressed, a notice in writing to each of the creditors (including Midland Oil Company), of whom the purchaser had knowledge or were named in the said affidavit of the Seller by its president,'' and ''that the notice so sent to Midland Oil Company, the plaintiff herein, was mailed by registered mail on Wednesday, July 13, 1932, addressed to plaintiff at the address given in the said affidavit of said James A. Hannah, arrived in Chicago on July 14, 1932, and was received by Midland Oil Company on July 15, 1932.'' Plaintiff states that the precise question involved in the instant contention has not been passed upon by the reviewing courts of this State and that the holdings on the question in other jurisdictions are not of much aid, as the language of our statutes is entirely different from that of the other states. Plaintiff cites no authority in support of its instant contention, but it argues that if we adopt garnishee's interpretation of the section such interpretation would aid and encourage

fraud because a notice to creditors who might be located in certain parts of the United States would not reach them until after the expiration of five days. The Bulk Sales law is in derogation of the common law and must be strictly construed, and we have no power to read into the law a requirement not strictly within its terms. It is for the legislature to remedy defects, if there be any, in the law.

Plaintiff contends that the notice is insufficient, under the statute, because, it argues, the act requires that the notice should list the goods and chattels purchased. The statute, as we read it, does not require such listing in the notice.

Plaintiff also contends that the notice fails to give the names of the creditors whose indebtedness the buyer is assuming and the amounts due to each. The statute makes no such requirements. The necessary requirement is that the creditor be notified of the "price, terms and conditions" of the sale. Under the stipulation of facts it appears that garnishee, on July 13, 1932, sent, by registered letter, a notice in writing to each of the creditors, including plaintiff, "containing a full, accurate and complete list of the creditors of the vendor, their addresses and the amounts owing to each as near as may be ascertained."

We find no real merit in the contention that there is a discrepancy between the purchase price stated in the notice and the purchase price stated in the contract, and that the notice, therefore, is in this respect fatally defective and insufficient. The specific sum stated in the notice is $9,516.91, but the notice also provides that the purchaser assumes all of the contracts of the seller with its owner-drivers and agrees to assume certain other obligations that might be due and owing as of July 15, 1932, such as rents and employees' salaries, and there is nothing in the record to show that the aforesaid items did not make up the

difference between $8,716.91 and $9,516.91. Indeed, plaintiff, in its argument in support of the instant contention, is forced to use testimony alleged to have been given at the hearing of the attachment issue.

There is no merit in plaintiff's further contention that the evidence fails to prove that the $3,000 was paid on the 19th. It appears that during the trial of the garnishment proceedings the following occurred: "The Court: In this case the money was paid over and the deal was consummated prior to the service of the summons, was it? Mr. Rothmann (attorney for plaintiff): Two hours before. Mr. Schwartz (attorney for garnishee): Two hours before." This plain admission of counsel for plaintiff is binding upon it. But plaintiff argues that its counsel, at the time of the admission, could not have known when the $3,000 was paid and that the admission must be considered as amounting to no more than an admission that the garnishee claimed that the money was paid before the service of the garnishment, and plaintiff argues from certain alleged testimony that has been stricken from the bill of exceptions that the proof fails to show when, if ever, the $3,000 was paid. In view of the admission of counsel for plaintiff it was not necessary for garnishee to offer proof as to the time of the payment. Had plaintiff withdrawn the admission a different situation might have been presented.

Plaintiff further contends that the evidence tends to show that defendant moved out of its place of business and the garnishee moved into said premises on July 15, 1932, and that such action by garnishee was clearly in violation of the Bulk Sales law. In support of this contention plaintiff cites certain testimony alleged to have been heard on the trial of the attachment issue, but even if we were allowed to consider such evidence we would hold that it was insufficient to support plaintiff's instant contention.

Plaintiff contends that "in still another respect is the sale herein in violation of the Bulk Sales Law, not perhaps of the letter, but surely of the spirit thereof"; that "from the record herein, it appears that the defendant was indebted in the sum of $22,293.35 to sixty-eight creditors, the plaintiff being one of the largest"; that "by the terms of the sales contract between the defendant and garnishee, eleven creditors were paid in full to the extent of $9,500 of the purchase price, being the debts assumed by the garnishee"; that "only the $3,000 cash payment was left to take care of debts in the sum of $12,793.35 due to fifty-seven creditors." In support of the instant contention plaintiff argues that "the provision in the sales contract with reference to the assumption of certain debts by the garnishee is fraudulent in letter, spirit and purpose and contrary to the very purpose and intent of the Bulk Sales Law which is to protect all creditors." In support of its contention plaintiff cites *Mattoon Grocery Co. v. Stuckemeyer*, 326 Ill. 602, but that decision, in our judgment, does not support plaintiff's contention. A general rule governing bulk sales laws is that a preference of some creditors over others is not prohibited where the parties to the sale have complied in all respects with the express terms of the Bulk Sales Law. (See 27 C. J. 883; *Ward & McGowen Grocery Co. v. Franklin, Stiles & Franklin*, 18 Ala. App. 619, 93 So. 205; *Bailen v. E. P. Badger Import Co.*, 99 Neb. 24, 154 N. W. 850, 852.)

Plaintiff further contends that "the sale herein is fraudulent and void because it was made with intent to hinder, delay and defraud the plaintiff, and the garnishee herein had notice of such fraudulent intent of the seller." Plaintiff argues that the fraudulent intent of defendant was litigated and judicially determined in the attachment proceeding and that "the only question, therefore, is whether the garnishee herein had notice of the fraudulent intent of the defendant," and

further argues that the evidence shows that the garnishee had such notice. The attachment proceeding was between plaintiff and the debtor, defendant. Garnishee was not a party to the attachment proceeding, and had no right to be heard upon any issue therein. Garnishee argues that four different grounds for attachment were alleged in plaintiff's affidavit for attachment, and that there is nothing in the record to show upon which ground or grounds the court sustained the attachment. But, assuming for the purposes of the instant contention that the judgment in the attachment proceeding determined that defendant was guilty of fraudulent intent, nevertheless, we find nothing in the proceedings in the garnishment hearing that warrants us in holding that garnishee had notice of the fraudulent intent of the seller. Indeed, the stipulation of facts states ''that on July 13, 1932, the purchaser *in good faith* caused to be sent by registered letter'' a notice in writing to each of the creditors of whom the garnishee had knowledge or was informed. As garnishee argues, if it *''in good faith''* caused to be sent the notice to each of the creditors, such conduct is hardly consistent with the theory that it was participating in a scheme of the debtor to hinder and defraud its creditors, for if the garnishee were a party to such a scheme the notice would not have been sent ''in good faith.''

Plaintiff further contends that ''at the time the garnishment herein was served, the three thousand dollar cash payment as well as the ninety-five hundred dollars thereafter paid out by the garnishee were subject to garnishment.'' We have heretofore passed upon the first part of this contention. We find no merit in the contention that the $9,500 thereafter paid out by garnishee was subject to garnishment. When the $3,000 was paid by garnishee to defendant, garnishee had no longer any property or effects belong-

ing to the judgment debtor. By the contract the debts assumed were debts owing to certain creditors of defendant, and the promise of garnishee was to pay the said debts to those creditors. It is the law of this State that where a contract is made for the benefit of a third party, not a party to the contract, the rights under the contract are vested in the third party without the necessity of his assenting to or indicating that he has accepted the benefits thereof. In the instant case a right vested in the creditors whose claims garnishee had agreed to pay. That garnishee thereafter paid all of the creditors whose claims it had agreed to pay is undisputed.

Garnishee contends that "the plaintiff is not entitled to judgment herein, inasmuch as the answer of the defendant disclosed that third parties were interested and the plaintiff did not bring them into the suit." We have not deemed it necessary to pass upon this contention, nor have we deemed it necessary to consider garnishee's further contention that "no personal judgment (beyond the $205 admitted to be due in the answer) can in any event be entered against the garnishee herein in the absence of evidence that the stock of goods involved is not still in the garnishee's possession."

We have carefully and patiently considered the many contentions raised by plaintiff and have reached the conclusion that there is no substantial merit in any of them.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

GRIDLEY, P. J., and SULLIVAN, J., concur.