Earl W. Pliley, Plaintiff, v. Leroy H. Phifer, Jr. et al., and Pullman Trust and Savings Bank, Defendants, and Chicago National Bank, Appellant.

Gen. No. 46,060.

Opinion filed January 11, 1954.
Rehearing denied March 8, 1954. Released for publication March 8, 1954.

BROWNING & PARKIN, of Chicago, for appellant; RICHARD REX PARKIN, of Chicago, of counsel.

HARRY H. KRINSKY, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

On February 26, 1951 the plaintiff, Earl W. Pliley, recovered a judgment in the circuit court of Cook county against the principal defendant, Leroy H. Phifer, Jr., in the sum of $4,708 and costs, upon notes executed by him May 25, 1950. Execution issued and was returned unsatisfied by the sheriff on March 16, 1951. On May 29, 1951 plaintiff filed his complaint in chancery against Phifer and others, alleging that one or all of the additional defendants, Levine, Vander Wagen, Vander Wagen, Jr., and Berscheid held monies, property or choses in action in which Phifer had an interest but which were held so as to prevent plaintiff from reaching such assets except by these proceedings. The Chicago National Bank was joined as an additional party. The complaint sought a discovery and asked

that any property in which Phifer had an interest be decreed to apply on plaintiff's judgment.

The individual defendants answered the complaint denying that they held any assets in which Phifer had an interest, but admitting that they held the sum of $2,364.86 which was assigned to the Chicago National Bank by an agreement dated December 6, 1950 between them and Phifer. The bank answered that on December 19, 1949 it loaned Phifer the sum of $2,500 which is past due and unpaid, and took as security therefor fifty shares of the common capital stock of Floral Adaptor Corporation which it still holds; that it is the beneficiary of the agreement made December 6, 1950 between Phifer on the one hand, and Levine, Vander Wagen, Vander Wagen, Jr., and Berscheid on the other; that the funds thus held belong to the bank; and that Phifer has no interest therein until the bank's loan is paid in full. There is evidence that as additional security for the amount due the bank from Phifer it obtained from Walter C. Erickson and Lawrence A. J. Kelly firm offers by letter to buy the stock of the Adaptor Corporation at par in the event said stock came into possession of the bank through default or for any other reason.

There is also evidence in the record to the effect that the bank endeavored to realize on the written promises of Erickson and Kelly and made demand on them to purchase the stock pledged to them as security, but no legal action was taken on their continued refusal to abide by their agreement; and there is evidence also that the stock is now worthless.

The complaint and answers were referred to Isidore Brown, master in chancery. After setting forth the salient facts hereinabove recited, he found that the bank renewed Phifer's note five times, the last time being on September 18, 1950; that on that date, as at

each other renewal, defendant Phifer signed a new note in place of the former one; that until December 6, 1950 Phifer had been a member of a partnership comprising, in addition to him, Levine, Vander Wagen (for whom Vander Wagen, Jr., was subsequently substituted) and Berscheid; that on December 6, 1950 an agreement was drawn up in connection with the withdrawal of Phifer from the partnership reciting in substance that Phifer was obligated to the bank on his principal note of $2,500 dated September 18, 1950 and secured by fifty shares of the capital stock of Floral Adaptor Company; that he agreed that his share of the earnings in the partnership, as determined by a final accounting, should be applied in payment of the obligations of this indebtedness; that he expressly authorized, directed and empowered Levine, Vander Wagen and Berscheid to hold and retain his earnings for the purpose of applying them in reduction or payment of his obligation to the bank; and that "any excess shall thereupon be paid by the remaining partners to Phifer." This agreement was never executed by the parties, but a copy of the unexecuted copy was furnished the bank in January 1951.

December 6, 1950 Phifer withdrew from the partnership, and simultaneously with his withdrawal another agreement, not identical with but substantially the same as the unexecuted agreement, was signed by the parties. As stated, the bank had a copy of the unexecuted agreement, but never received a copy of the later agreement actually signed; nor did it know, until such fact was disclosed during the hearings, that the signed agreement replaced the unexecuted one in its possession.

Pursuant to the agreement an accounting was had showing that on January 6, 1951 Phifer's interest in the partnership amounted to $5,916.36, of which

$3,051.59 was paid to the bank pursuant to the agreement and in satisfaction of another note mentioned, and that $500 was paid to Phifer, leaving in the hands of the partnership the sum of $2,364.86 which is now held by Levine (the partnership of Levine, Vander Wagen and Berscheid having been dissolved) in a special account in his name and which he will pay to the party determined by the decree of court to be entitled thereto.

The plaintiff's complaint was filed May 29, 1951, the bank filed its answer October 8, 1951, the audit which showed the amount to which Phifer was entitled from his partners, as of January 6, 1951, was dated July 5, 1951. The hearing before the master commenced July 21, 1952, and the decree herein was entered on November 25, 1952.

Upon these facts the bank claims that it is a third-party beneficiary under the unexecuted agreement and is therefore entitled to the $2,364.86 now held by Levine. The master found that the bank is entitled to these funds, and recommended that a decree be entered requiring Levine to turn them over to the bank. However, the chancellor sustained exceptions to the master's report and entered a decree adverse to the bank's claim, from which it has taken an appeal.

■■ As Phifer's creditor the bank sought by all means, short of suit, to enforce payment of the indebtedness, and as a result thereof Phifer voluntarily, on December 6, 1950, entered into the agreement with his partners whereby he withdrew from the partnership and directed the remaining partners to apply his interest toward payment of the indebtedness. When the agreement was made the partnership had uncompleted contracts, and the amount of Phifer's profit could not be ascertained until they were completed, accounts collected and a partnership accounting had. Accordingly

Phifer did all he could to guarantee payment by executing the agreement; and the bank, upon receiving notification, "relaxed" its efforts to collect and awaited a final accounting and payment. Of course if Phifer had been able to realize his profits from the partnership when the agreement was signed and pay his indebtedness to the bank there could be no question of his right to do so. The instant proceeding arose because Phifer had another creditor, the plaintiff herein, who took judgment against him on February 26, 1951, over two months after the agreement was executed. There is no claim or evidence of any fraudulent conveyance, and the mere fact that Phifer conveyed his interest in the partnership for the sole interest of the bank at the time when he had another creditor did not render the conveyance in anywise fraudulent. It has been held in Illinois that even an insolvent debtor or one in failing circumstances may prefer a creditor, provided the debt preferred is actual, the property transferred does not greatly exceed the amount of the claim, and the transaction is not a mere device to secure an advantage to the debtor or hinder, delay or defraud other creditors. *Bartel v. Zimmerman,* 293 Ill. 154; *Third National Bank v. Norris,* 331 Ill. 230.

██ ██ Questions involved in the decision of this case are whether the agreement of December 6, 1950 was revocable by Phifer, and whether it divested him of all interest in the partnership until the bank's obligation was paid in full. Without reciting the agreement at length we call attention to the provision therein under which Phifer specifically divested himself of any interest in the partnership assets until the bank was paid in full, thereby agreeing in effect that he would not revoke the contract. This undertaking, we think, amounted to a conveyance or assignment of Phifer's partnership interest to his former partners for the

benefit of the bank. The master who heard all the evidence concluded that the agreement "made the Chicago National Bank a third party creditor beneficiary and in effect assigned the moneys owing Leroy H. Phifer, Jr. to the Chicago National Bank." Under similar circumstances the Supreme Court held, in the early cases of *Young v. Jones*, 180 Ill. 216, and *Smith v. Bates Machine Co.*, 182 Ill. 166, as well as in cases cited in these decisions, that a direction of this kind amounted in equity to an assignment of so much of his earnings as would be necessary to make the payments. In the *Young* case the court quoted with approval from 2 Am. & Eng. Ency. of Law, 2d ed., pp. 1059, 1060, to the effect that

". . . 'it is a general rule that an order payable out of a particular fund operates as an equitable assignment of the fund, not only as between the drawer and the payee, but as regards the drawee also, notwithstanding the order may not be accepted by the latter party.' " ౢ

■■■■ Plaintiff proceeds on the theory that by reason of the judgment recovered by him against Phifer and the institution of the present creditor's bill, he established a lien upon the fund superior to any claim the bank had, and it is argued that although the bank is named in the agreement as a third-party beneficiary, nevertheless its being so named was only incidental to the purpose and terms of the agreement and not a material part thereof; that being so incidentally named gave the bank only the right to sue upon it in its own name; and that without some affirmative action on the part of the bank, either by accepting the provisions of the agreement or by instituting some action thereon, before the rights of the plaintiff accrued, the bank lost its right to priority over plaintiff's claim. Of course if the agreement was a binding bilateral contract for the

benefit of the bank it was irrevocable by its terms because it had been partly performed by the actual withdrawal of Phifer from the partnership. In that situation the acceptance by the bank was not necessary. In *Bay v. Williams,* 112 Ill. 91, the court recognized this doctrine by stating that "it has never been held by this court that the express assent of the beneficiary is necessary to his right to avail of its benefits," and in *Midland Oil Co. v. Packers Motor Transport,* 277 Ill. App. 451, the rule was again stated. We gather from the decisions, other than *Commercial National Bank v. Kirkwood,* 172 Ill. 563, on which plaintiff bases his claim, that it is only where the agreement is a mere agency relationship and not a contract that acceptance by the beneficiary is necessary. It should be noted, however, that there is evidence of the acceptance of the agreement by the bank. Albert Drozda, an officer of the bank, testified that upon being advised that the agreement was to be executed, the bank "relaxed" its attitude toward Phifer and "didn't take him into court" because of the funds that were to be assigned to the bank, and that during the month of January 1951 and subsequently he talked to Phifer and Berscheid on numerous occasions about the agreement. Furthermore, the bank was paid the $3,000 due under the terms of the agreement by the Floral Adaptor Company and accepted this payment under the terms.

■ ■ Plaintiff's contention overlooks the legal relationship held in Illinois to exist between the third-party beneficiary of a contract and his promisor. Plaintiff concedes that the bank had a right to sue the remaining partners. If that be true, the right arose because they owed a legal duty to pay the bank, resulting from the contract between Phifer and his former associates; consequently after the agreement was made and Phifer withdrew from the partnership his former

406

associates were not obliged to pay him, and the only right which remained in him was to insist that they comply with their duty to pay the bank pursuant to the terms of the agreement. The only right that plaintiff has under his creditor's bill is to enforce the rights which Phifer may have had to the fund in question. The courts in this State have consistently held that the third-party beneficiary obtains a vested right as against the promisor, and this right, once given, deprives the promisor of any interest or right in the subject matter of the promise, including the right to alter, rescind or revoke it; nothing remains except that the promisor carry out his promise to the third-party beneficiary. *Prather v. Vineyard,* 9 Ill. (4 Gilm.) 40; *Bay v. Williams,* 112 Ill. 91; *Hartman v. Pistorius,* 248 Ill. 568; *Conerty v. Richtsteig,* 379 Ill. 360; *Joslyn v. Joslyn,* 386 Ill. 387; and various other decisions cited in the bank's brief.

As against these decisions plaintiff relies solely on *Commercial National Bank v. Kirkwood,* 172 Ill. 563, to sustain his position. In essence the transaction in that case did not constitute a third-party beneficiary contract, being a mere relationship of principal and agent which could be revoked by the principal at any time before the creditor accepted it. See Corbin on Contracts, 1950 ed., West Publishing Co., vol. 4, at p. 246, for a discussion of this decision. A complete statement of the facts involved in that case is contained in a later appeal reported in 184 Ill. 139, showing a significant difference between that case and the instant proceeding. The agreement of Orr to pay the creditors was a conditional promise to be complied with only if title should be found to be perfect; and being conditional, it did not then vest a right in the creditors and was subject to revocation by Rush until the right vested in the creditors, either by their acceptance conveyed to

Orr or by the perfecting of the title to the land. We think that the *Kirkwood* case is not susceptible of the construction sought to be placed upon it by plaintiff; and it is significant that it has never been cited by Illinois courts for the contention made with respect thereto by plaintiff. On the other hand, *Bay v. Williams* has been cited with approval in many cases reviewed in both the Supreme and Appellate Courts since the *Kirkwood* decision.

The problem here presented was not a question of determining which creditor obtained a lien by court decision but of recognizing the exclusive right of the bank to the fund under the agreement of December 6, 1950, before plaintiff had instituted any proceedings whatsoever.

Plaintiff raises for the first time the procedural point that the bank is not entitled to a decree awarding it the fund in controversy because it did not file a cross-complaint claiming the fund. The master recommended that a decree be entered directing Nathan A. Levine to turn over the fund to the bank. No objection was filed by plaintiff to this recommendation on the ground that the bank was not entitled to this relief because it had not filed a cross-complaint. When the present proceeding was instituted the fund was in the hands of Nathan A. Levine, and his answer alleged that it had been assigned to the bank by agreement of December 6, 1950. Subsequently the bank was made a party defendant and answered that it was entitled to the fund as beneficiary of the agreement. Since the person holding the fund admitted that it had been assigned to the bank no cross-complaint was necessary. At the hearing before the master Levine testified that the fund was being held subject to the decree of the court. Later when the decree was entered finding that plaintiff was entitled to the fund and sustaining plain-

408

tiff's objection to the master's report the chancellor directed Levine et al. to deposit the fund with the clerk of the court, to be held until further order of the court. The money is now held by the clerk. Under the situation thus presented the subject matter of the controversy has come into possession of the court without objection by any of the parties. Under the fundamental rule that a court of equity, having taken jurisdiction, will retain it for all purposes and do complete justice between the parties, it is incumbent upon the chancellor to distribute the fund to someone without further proceedings. Accordingly we are of opinion that the decree should be reversed and the cause remanded with directions to award the fund now in the hands of the court to the bank, and it is so ordered.

*Decree reversed and cause remanded with directions.*
NIEMEYER, P. J. and BURKE, J., concur.