JOAN M. SWAVELY, Plaintiff-Appellant, v. FREEWAY FORD TRUCK SALES, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—97—1826

Opinion filed August 26, 1998.

Stanley H. Jakala, of Berwyn, for appellant.

Griffin & Griffin, of Chicago (David J. Griffin, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Joan Swavely appeals from an order of the circuit court granting defendant Freeway Ford Truck Sales, Inc.'s motion to dismiss plaintiff's complaint in which plaintiff alleged defendant owed her money pursuant to a wage compensation agreement (Agreement) exe-

cuted between defendant and plaintiff's deceased husband, John Swavely (Swavely). On appeal, plaintiff contends that the trial court erred in granting defendant's motion to dismiss because the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 1994)) (Act) does not render her cause of action as a third-party beneficiary to the Agreement void as against public policy. For the reasons set forth below, we reverse and remand.

Plaintiff was married to Swavely until his death on December 9, 1995. Prior to his death, Swavely was employed by defendant. On September 1, 1992, Swavely and defendant entered into the Agreement, which outlined employment compensations due Swavely for base salary and commissions. The Agreement was to commence retroactively on January 1, 1992, and to terminate on December 31, 1994. Paragraph 5 of the Agreement stated: "In the event of Mr. John W. Swavely's death, all commissions due or to become due for Mr. John W. Swavely will be paid to his wife, Joan M. Swavely."

On April 3, 1996, plaintiff filed a complaint, as successor trustee of Swavely's declaration of trust, against defendant for accounts stated. Plaintiff alleged that as the named successor trustee of Swavely's declaration of trust dated May 11, 1993, she could maintain a suit against defendant for monies due Swavely pursuant to the Agreement. Defendant filed a motion to dismiss plaintiff's complaint, arguing that the complaint did not allege that plaintiff, as successor trustee of Swavely's trust, "had a contractual agreement with [defendant]," and that nothing set forth in the complaint or the trust documents established that "the Trust [was] entitled to compensation allegedly due [Swavely or plaintiff]." The trial court subsequently entered an order granting plaintiff leave to file an amended complaint.

On July 25, 1996, plaintiff filed a two-count amended complaint against defendant as a creditor beneficiary pursuant to paragraph 5 of the Agreement. Count I of plaintiff's amended complaint was entitled, "Amended Complaint for Accounts Stated,"[1] requesting a judgment for $200,000 covering commissions due Swavely from 1992 through September 15, 1994. Plaintiff also requested an accounting of all of defendant's sales from September 15, 1994, to the date of the amended complaint relating to Swavely's commissions, and payment to plaintiff of any monies due and owing as a result of that accounting.

Defendant filed a motion to dismiss plaintiff's amended complaint, arguing that an agreement to pay an employee's wages to a third party would be in violation of the Act because, based on the Act, "the

---

[1] Count II of plaintiff's complaint, requesting specific performance of the Agreement, is not at issue in this appeal.

employee must be paid wages or commissions earned by him" and upon Swavely's death, "his wages would be due his estate." Defendant further argued that any agreement to pay Swavely's wages and commissions to a third party "would be in violation of the mandatory language of the statute that the compensation be paid directly to the employee."

Plaintiff filed a memorandum in opposition to defendant's motion to dismiss count I of her amended complaint, arguing that defendant's motion to dismiss should be denied because, pursuant to the Agreement, she was a third-party beneficiary who was entitled to payment of Swavely's wages and commissions without opening his estate. Defendant, in reply to plaintiff's memorandum, argued that the clear language of the Act demonstrated that the General Assembly intended to protect employees by not allowing them to "assign or contract" wages or final compensation to third parties except under limited circumstances set forth in the Act.

On April 11, 1997, the trial court entered an order striking plaintiff's amended complaint with prejudice as to plaintiff individually. The trial court made a specific finding that its ruling did not act as a bar to a cause of action by Swavely's estate if the estate should file a complaint. This appeal followed.

Plaintiff contends that, as the wife of Swavely, and pursuant to the express language of paragraph 5 of the Agreement, she was a third-party beneficiary to the contract between Swavely and defendant, having the status of either a creditor beneficiary or donee beneficiary, who was therefore entitled to payment of Swavely's wages and commissions upon his death without having to open Swavely's estate. Plaintiff maintains that because her rights as a third-party beneficiary under the Agreement vested upon Swavely's death, she is able to directly enforce payment of his commissions pursuant to the Agreement as either a creditor or donee beneficiary. Defendant does not respond to, and therefore does not refute, plaintiff's argument that she is a third-party beneficiary under the Agreement. Instead defendant argues that a contractual provision between an employer and employee to pay the employee's wages to the employee's spouse upon the employee's death violates the Act and, therefore, renders the contractual provision void.

■ A trial court should not dismiss an action on the pleadings unless it is clearly apparent that no set of facts can be proven that will entitle the plaintiff to relief. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 504, 565 N.E.2d 654 (1990). When the legal sufficiency of a complaint is challenged by a section 2—619 motion to dismiss, all well-pleaded facts and reasonable inferences are accepted as true

(*Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 84-85, 651 N.E.2d 1132 (1995)), and a reviewing court must determine whether the allegations set forth in the complaint, interpreted in a light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted (*Burdinie*, 139 Ill. 2d at 505).

Plaintiff first argues that the trial court erred in dismissing her amended complaint because she was a third-party creditor beneficiary under paragraph 5 of the Agreement, which "assigned the preexisting duty or liability of [defendant] to be liable contractually to [plaintiff], as a third party beneficiary, for any monies due and owing [Swavely] upon the death of [Swavely]." Plaintiff further argues that even if this court should determine that plaintiff was not a creditor beneficiary under the Agreement, she can still maintain her cause of action as a third-party donee beneficiary.

■ "In Illinois, an individual not a party to a contract may only enforce the contract's rights when that contract's original parties intentionally enter into the contract for the direct benefit of the individual." *Cahill v. Eastern Benefit Systems, Inc.*, 236 Ill. App. 3d 517, 520, 603 N.E.2d 788 (1992). If a contract is entered into for the direct benefit of a third person, the third person may sue for breach of the contract even though he or she is not a party to the contract. Whether a party is a third-party beneficiary depends on the intent of the contracting parties and is determined on a case-by-case basis. *Midwest Concrete Products v. La Salle National Bank*, 94 Ill. App. 3d 394, 396, 418 N.E.2d 988 (1981). Courts must initially determine whether the benefit in the contract is direct to the third person or is but an incidental benefit to the third person arising out of the contract. *Cahill*, 236 Ill. App. 3d at 520. "In making this determination, it must appear from the language of the contract when properly construed that the contract was made for the *direct* benefit of the third person and that the benefit was not merely incidental." (Emphasis in original.) *Midwest Concrete Products*, 94 Ill. App. 3d at 396, citing *Young v. General Insurance Co. of America*, 33 Ill. App. 3d 119, 337 N.E.2d 739 (1975). "The promisor's intention must be shown by an express provision in the contract identifying the third-party beneficiary." *Cahill*, 236 Ill. App. 3d at 520. Because "people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention, and that the implication to overcome that presumption must be so strong as to amount practically to an express declaration." Therefore, "[t]he contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear." *Waterford Condomin-*

*ium Ass'n v. Dunbar Corp.*, 104 Ill. App. 3d 371, 373, 432 N.E.2d 1009 (1982).

■ Illinois courts have distinguished third-party donee beneficiaries from third-party creditor beneficiaries in determining what rights each has with regard to a third-party contract. A donee beneficiary is a third party to whom the benefit comes without cost, such as a donation or gift. A creditor beneficiary is a third party to whom a preexisting duty or liability is owed. *Hickox v. Bell*, 195 Ill. App. 3d 976, 993, 552 N.E.2d 1133 (1990). "In the typical creditor beneficiary case, A and B enter into a contract and thereafter B and C contract to have C perform B's obligation to A. A then becomes the third-party beneficiary to the contract between B and C." *Robson v. Robson*, 514 F. Supp. 99, 102 (N.D. Ill. 1981). In contrast, a donee beneficiary may acquire rights even though he is unaware that he has been made a beneficiary to the B-C contract. *Robson*, 514 F. Supp. at 103. Additionally, prior to the B-C contract, the donee beneficiary may have had no relationship whatsoever with B or C. *Robson*, 514 F. Supp. at 103.

Here, plaintiff maintains that *Robson v. Robson*, 514 F. Supp. 99 (N.D. Ill. 1981), is dispositive of this court's determination as to whether she can maintain her action against defendant as a third-party beneficiary. In *Robson*, the plaintiff's husband, Ray Robson, Jr., entered into a contract with his father, Ray Robson, Sr. The contract provided that, in the event Robson Jr. predeceased his father, Robson Jr.'s company shares were to become the property of Robson Sr., who thereafter was to pay $500 per month from the proceeds of the company to the plaintiff for five years immediately following Robson Jr.'s death or until the plaintiff remarried. Robson Jr. and Robson Sr. modified the contract before Robson Jr.'s death by deleting the portion of the contract providing payment to the plaintiff. Upon Robson Jr.'s death, the plaintiff filed suit against Robson Sr., arguing that she was a third-party beneficiary with vested rights that were being infringed by Robson Sr.'s refusal to perform under the contract. *Robson*, 514 F. Supp. at 100-01.

■ The *Robson* court found that the plaintiff was a donee beneficiary to the contract because "[t]he contracting parties *** clearly intended the contract to directly benefit not only themselves, but also their wives, with respect to whom specific provisions were drafted." *Robson*, 514 F. Supp. at 102. However, because Robson Jr. and Robson Sr. modified the contract before Robson Jr.'s death, the court held that the plaintiff was unable to "affect the decisions made by the contracting parties" because her rights as a donee beneficiary had not vested. The *Robson* court reasoned that "[w]here the donee beneficiary's right is contingent upon the occurrence of certain events, it does not vest

until the occurrence of those events." *Robson*, 514 F. Supp. at 104, citing *Dudley v. Uptown National Bank*, 25 Ill. App. 2d 514, 528, 167 N.E.2d 257 (1960), and *Piley v. Phifer*, 1 Ill. App. 2d 398, 407-08, 117 N.E.2d 678 (1954).

■ We find merit in plaintiff's argument here that paragraph 5 of the Agreement was an express provision identifying her as a third-party donee beneficiary entitled to the direct benefit of Swavely's wages and commissions under the Agreement upon Swavely's death. Because plaintiff in this case, like the plaintiff-wife of the deceased contracting party in *Robson*, was to receive a benefit from the Agreement that came without cost as a donation or gift, as opposed to the satisfaction or discharge of a preexisting duty or liability, we find that plaintiff was a donee beneficiary under the Agreement. As in *Robson*, plaintiff's third-party beneficiary rights here were contingent upon the death of her husband, the contracting party. Because, unlike the contracting parties in *Robson*, defendant and Swavely did not modify the Agreement prior to Swavely's death, plaintiff's rights as a third-party donee beneficiary vested upon Swavely's death. Accordingly, it is apparent from the clear language of paragraph 5 of the Agreement that the intention of defendant and Swavely was that plaintiff would directly benefit by receiving Swavely's wages and commissions upon his death. We therefore find that the trial court erred in dismissing plaintiff's amended complaint; plaintiff has a legally cognizable action for breach of the Agreement, notwithstanding that she was not a direct party to the Agreement.

Plaintiff also argues that the Act does not render her action void as against public policy. Plaintiff contends that defendant's argument that the Act bars her from maintaining this cause of action from the standpoint that the legislature intended wages and commissions to be paid to the wage earner, and not to a third party, has no merit. Plaintiff argues that "the assignment of the preexisting duty or liability by [defendant] to pay to [plaintiff] upon [Swavely's] death moneys due and owing [Swavely], is not against public policy" because our courts have "recognized the validity of such an assignment."

Defendant argues that paragraph 5 of the Agreement is void and unenforceable because it is violative of the Act, which "[b]ars an employee from entering into a contract to pay his wages to a third party even his wife." Defendant asserts that the wording of the Act mandatorily requires "payment to the employee not to a third party." Defendant also argues that, while the Act contains four bases on which an employer may make deductions from an employee's wages, "nothing in [the Act] allows an employee to direct all his wages to be paid to a third party." Defendant therefore argues that "it is clear from the

plain meaning of the words of [the Act] that the General Assembly intended to protect the employee and not allow an employee to assign or contractually have his wages or final compensation paid to a third party with the exception of a valid wage assignment." According to defendant, "It is clear that the General Assembly wants to protect the employee even from his own acts. To do otherwise would allow an employee to assign his wages to a third party in excess of the limited basis provided by law." Defendant further asserts that the fact that the third party in this case is the wife of Swavely, the employee, "does not alter the prohibition." Defendant contends that "if the employee could contract to have his wages paid to his wife without violating the statute, he could also contract to have his wages paid to an unrelated third party without violating the statute." Defendant argues that "to allow an employee to contract to pay his wages to a third party would deprive his estate of the right to the employee's wages on his death." In arguing that the Act bars plaintiff from maintaining her cause of action, defendant asserts that "neither party could find any previous case addressing this issue."

■ Because the construction of a statute is a question of law, the standard of review on this issue is *de novo. Lucas v. Lakin*, 175 Ill. 2d 166, 171, 676 N.E.2d 637 (1997). There is no exception to the rule that a contract that violates a valid statute is void, as the law cannot enforce a contract that it prohibits. *Sibley v. Health & Hospitals' Governing Comm'n*, 22 Ill. App. 3d 632, 637, 317 N.E.2d 642 (1974). Illinois law "provides a defense to the enforcement of a contract if that contract is illegal either as a matter of Illinois or of Federal law." *American Buyers Club of Mt. Vernon, Illinois, Inc. v. Grayling*, 53 Ill. App. 3d 611, 613, 368 N.E.2d 1057 (1977). The question of whether a contract is enforceable under the public policy of the state is a conclusion of law (*Rome v. Upton*, 271 Ill. App. 3d 517, 520, 648 N.E.2d 1085 (1995)) and turns on the particular facts and circumstances of each case (*O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341-42, 537 N.E.2d 730 (1989)).

■ "As a general rule, courts will not enforce a private agreement which is contrary to public policy." *Holstein v. Grossman*, 246 Ill. App. 3d 719, 725, 616 N.E.2d 1224 (1993). Public policy is the legal principle that no one may lawfully do that which has the tendency to injure the welfare of the public. The public policy of the state is reflected in its constitution, statutes and judicial decisions. *Holstein*, 246 Ill. App. 3d at 725-26. "Our courts apply a strict test in determining whether a contract violates public policy." *Holstein*, 246 Ill. App. 3d at 726. Because public policy itself strongly favors freedom to contract, "[a] *** court will not declare a contract illegal unless it expressly

contravenes the law or a known public policy of this State." *Holstein,* 246 Ill. App. 3d at 726. Agreements are not void as against public policy unless they are clearly contrary to what the constitution, statutes or court decisions have declared to be the public policy or unless they are "manifestly injurious to the public welfare." *Schumann-Heink v. Folsom,* 328 Ill. 321, 330, 159 N.E.2d 250 (1927).

■ Sections 3, 4 and 9 of the Act provide, in pertinent part:

"§ 3. Every employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1939, may be paid once a month. Commissions may be paid once a month. \*\*\*

§ 4. All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned. All wages paid on a daily basis shall be paid insofar as possible on the same day as the wages were earned, or not later in any event than 24 hours after the day on which the wages were earned. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1938, may be paid on or before 21 calendar days after the period during which they are earned.

The terms of this Section shall not apply, if there exists a valid collective bargaining agreement which provides for a different date or for different arrangements for the payment of wages.

\* \* \*

§ 9. Except as hereinafter provided, deductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; or (2) *to the benefit of the employee;* or (3) in response to a valid wage assignment or wage deduction order; or (4) *made with the express written consent of the employee, given freely at the time the deduction is made.* \*\*\*

The Department shall establish rules to protect the interests of both parties in cases of disputed deductions from wages. Such rules shall include reasonable limitations on the amount of deductions beyond those required by law which may be made during any pay period by any employer." (Emphasis added.) 820 ILCS 115/3, 4, 9 (West 1996).

Defendant's argument that the Agreement violates sections 3, 4 and 9 of the Act has little merit, as evidenced by the fact that defen-

dant cites to no authority to support his assertions that the Act's plain language mandatorily bars an employee from entering into a contract to pay wages to a third party. Although it is clear that the Act mandates that employers shall "pay every employee" all wages earned, nothing in the Act directly prohibits an employee from assigning his wages to a third party. In fact, section 9 of the Act specifically states that deductions by employers from wages or final compensation are permissible if they inure to the benefit of the employee or are in response to a valid wage assignment or any deductions with the consent of the employee. Moreover, in the absence of supporting authority and clear argument by defendant, its argument that the Agreement is violative of the Act fails.

We further note that in defendant's reply to plaintiff's memorandum in opposition to defendant's motion to dismiss before the trial court, defendant originally argued:

> "*Section 9* relates to deductions made by the employer from the employee's wages or final compensation. In the instant matter, the issue does not concern the employer deducting sums from the employees wages or final compensation. The issue involved is whether the employer owed wages to the employee.
>
> Assuming arguendo that *Section 9* applied to the instant matter, the facts set forth in the Complaint do not satisfy any of the four criteria that would allow the Defendant to deduct the employee's total wages or final compensation and pay the wages or final compensation to a third party." (Emphasis in original.)

While it appears that defendant argued in the trial court that section 9 did not apply because the Agreement did not involve a "deduction" of pay from Swavely, defendant appears to argue on appeal that the limited bases set forth in section 9 allowing deductions from compensation indicate that the legislature intended that "all other deductions are prohibited." It is unclear whether defendant is attempting to argue that paragraph 5 of the Agreement should be considered a "deduction" in Swavely's pay. Regardless of defendant's position, it has failed to provide convincing evidence to this court to support its claim that the Agreement violates the Act.

Additionally, an employee's right "to make an assignment of his wages has long been recognized in this State, and the privilege of using and contracting for the disposal of wages is both a liberty and a property right." *State Street Furniture Co. v. Armour & Co.*, 345 Ill. 160, 162, 177 N.E. 702 (1931). "A debt is property, which may be sold or assigned, subject to the ordinary rules of the common law in determining the rights of the assignee, and, when untainted with fraud, its sale offers no ground for complaint by the debtor." *State*

*Street Furniture Co.*, 345 Ill. at 165-66. Therefore, defendant's assertion here, that all wages earned by an employee require payment to that employee and not to a third party, is directly contrary to established Illinois policy regarding the validity of assignments of wages.

Moreover, defendant has cited no authority for its assertion that the purpose of the Act is to "protect the employee even from his own acts" by not allowing him to assign his wages to a third party "in excess of the limited basis provided by law." Contrary to defendant's contention, the "primary objective of the Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits." *Mueller Co. v. Department of Labor*, 187 Ill. App. 3d 519, 524, 543 N.E.2d 518 (1989). See also *People ex rel. Martin v. Lipkowitz*, 225 Ill. App. 3d 980, 985, 589 N.E.2d 182 (1992) (in determining that the public policy underlying the Act inures to the benefit of both workers and taxpayers, the court held that the "employer's denial of benefits earned by its employees burdens the State financially and socially, such as by decreasing the tax base and potentially depleting State assistance funds"). Therefore, defendant's interpretation of the legislative intent of the Act, allowing defendant to hold a deceased employee's earned wages and commissions after defendant specifically contracted to pay those wages to a third-party beneficiary upon the death of the employee, would be more likely to offend the legislative intent behind the Act.

We further briefly observe that defendant's theory, that enforcing the Agreement would "deprive [Swavely's] estate of the right to [his] wages on his death," has no support in either the facts of this case or in law. There is no evidence in the record that the estate is involved in any litigation regarding contested sums owed Swavely under the Agreement. Moreover, it is manifestly clear from the plain language of the Agreement and the terms of Swavely's trust that Swavely intended plaintiff to receive benefits upon his death. Once the rights of a third-party beneficiary vest, the promisor is deprived of "any interest or right in the subject matter of the promise, including the right to alter, rescind or revoke it; nothing remains except that the promisor carry out his promise to the third-party beneficiary." *Pliley v. Phifer*, 1 Ill. App. 2d 398, 407, 117 N.E.2d 678 (1954). Defendant, therefore, has no standing to argue on behalf of Swavely's estate that the estate has been deprived of a benefit due to plaintiff's present cause of action.

Because public policy favors freedom to contract, this court will not subvert the manifest intention of the Agreement that defendant would pay Swavely's wages and commissions to plaintiff upon Swave-

ly's death, absent a finding that the Agreement expressly contradicts the law or a known public policy of the state. Defendant has failed to provide a convincing argument that enforcing the Agreement would either violate the Act or be "manifestly injurious to the public welfare."

For the reasons stated, we reverse the trial court's order dismissing plaintiff's amended complaint and remand the cause for further proceedings consistent with this order.

Reversed and remanded.

LEAVITT, P.J., and GORDON, J., concur.