2026 IL App (4th) 250350

NO. 4-25-0350

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 2, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CLORINDA D'AGNOLO, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| CATHOLIC CEMETERY ASSOCIATION OF | ) | No. 19L43 |
| PEORIA, an Illinois Not-for-Profit Corporation; and | ) | |
| THE CATHOLIC DIOCESE OF PEORIA, | ) | Honorable |
| Defendants-Appellants. | ) | Timothy J. Cusack, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court, with opinion.
Justices Zenoff and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1        In March 2019, plaintiff, Clorinda D'Agnolo, filed a complaint in the Peoria County

circuit court asserting various claims against defendants, Catholic Cemetery Association of Peoria,

an Illinois not-for-profit corporation (CCAP), and the Catholic Diocese of Peoria, including,

*inter alia*, breach of contract. The claims arose from a contract between D'Agnolo and CCAP,

which maintains and operates Resurrection Cemetery (Cemetery) in Peoria. Pursuant to the

contract, D'Agnolo purchased a double grave site at the Cemetery following the death of her

fiancé, David M. Lipari. In October 2015, the parties interred Lipari's remains at the Cemetery. In

April 2018, Lipari's children from a previous marriage obtained permits from the Peoria

Department of Health (Department) to disinter Lipari's remains. Lipari's remains were disinterred

the same month without D'Agnolo's knowledge or permission.

¶ 2 In September 2024, the parties filed cross-motions for summary determination of a major issue and summary judgment under section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2024)). Following an October 2024 hearing, the trial court entered a written order granting D'Agnolo's motion for summary determination of a major issue, concluding CCAP breached the parties' easement agreement by allowing Lipari's remains to be disinterred without D'Agnolo's or her representative's written permission. The court additionally granted summary judgment in favor of D'Agnolo with respect to defendants' affirmative defense No. 6, which asserted immunity under section 45 the Disposition of Remains Act (Remains Act) (755 ILCS 65/45 (West 2024)).

¶ 3 Upon motion by defendants, the trial court certified two questions for interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). In an unpublished order, this court allowed the motion as to the following question:

> "Whether a provision in a burial easement agreement that prohibits disinterment from a grave without the written permission of the easement owner conflicts with Section 5 of the [Remains Act] (755 ILCS 65/5), Section 21(5) of the Vital Records Act [(Records Act)] (410 ILCS 535/21(5)), or section 20(a)(1)(E) of the Crematory Regulatory Act [(Crematory Act)] (410 ILCS 18/20(a)(1)(E)), such that the provision should be deemed invalid."

¶ 4 This court concludes a provision in a burial easement agreement that prohibits disinterment from a grave without the written permission of the easement owner does not conflict with the Illinois statutes set forth in the certified question and is therefore not invalid. Accordingly, this court answers the certified question in the negative.

¶ 5 I. BACKGROUND

¶ 6        D'Agnolo began dating Lipari in 2009. Prior to their relationship, Lipari was married and had four adopted children (the Lipari children) with his wife. Lipari and his wife were divorced in 2008. Sometime in 2011, Lipari proposed to D'Agnolo at a resort in Phoenix, Arizona. D'Agnolo claimed she and Lipari "wanted to be married" but "couldn't," so they "lived as brother and sister to receive the Eucharist." Despite never marrying, D'Agnolo sometimes referred to Lipari as her husband. In the summer of 2015, Lipari became ill and was later diagnosed with an aggressive form of cancer. Lipari died on October 9, 2015.

¶ 7        Following Lipari's death, D'Agnolo arranged his funeral services and burial. D'Agnolo did not invite Lipari's children or ex-wife to the private funeral mass and hired security to ensure they would not attend. As part of these arrangements, D'Agnolo entered into a sales contract and lot easement and income care agreement with CCAP to purchase a double gravesite at the Cemetery. The lot easement and income care agreement stated it was subject to the following:

> "[A]ll conditions, limitations, rules and regulations, existing or those which may hereafter be in force from time to time for the government, regulation, adornment, improvement and control of said Cemetery, by the Catholic Bishop of Peoria, or [CCAP], which conditions, limitations, rules and regulations shall be part of this Grant to the same extent and purport as if herein fully set forth."

Lipari's remains were interred at the Cemetery nine days after his death.

¶ 8        In March 2018, nearly 2½ years after Lipari's death, the Lipari children contacted Deacon Bob Myers, the former executive director of the Cemetery, about disinterring Lipari's remains. The Lipari children believed D'Agnolo had unlawfully seized Lipari's remains and, further, his interment at the Cemetery was contrary to his wishes because it was not accessible to

his physically handicapped daughter. Deacon Myers informed the Lipari children that to disinter Lipari's remains, they would need to obtain a permit from the Department issued to the subject funeral home.

¶ 9 On April 1, 2018, Lipari's ex-wife and children submitted an application for disinterment to the Department. A few days later, the Peoria County Coroner's Office issued a permit to cremate Lipari's remains. Additionally, the Department issued a permit for the disposition of a dead human body to Wright & Salmon Mortuary, authorizing the disinterment of Lipari's remains and the transfer of said remains to Heartland Cremation Mortuary Services for cremation. Shortly thereafter, Wright & Salmon Mortuary disinterred Lipari's remains. The Cemetery did not notify D'Agnolo in advance or request her written permission to disinter Lipari's remains. Following Lipari's cremation, Heartland Cremation Mortuary Services shipped his ashes to Lipari's children and ex-wife.

¶ 10 Following her discovery that Lipari had been disinterred, D'Agnolo filed a complaint against CCAP in the Peoria County circuit court in 2019 and added the Catholic Diocese of Peoria as a defendant in 2020. In her third amended complaint, D'Agnolo asserted seven claims against defendants: (1) breach of contract, (2) intentional trespass to easement, (3) negligent trespass to easement, (4), intentional infliction of emotional distress, (5) trespass to chattel, (6) civil conspiracy (intentional trespass to easement), and (7) civil conspiracy (intentional infliction of emotional distress).

¶ 11 In November 2023, the trial court entered a written order granting, in part, D'Agnolo's first motion for summary determination of a major issue. In the order, the court concluded, "[T]he Statutes of the Diocese of Peoria [(Diocesan Statutes)] are part of the Lot Care and Easement Agreement between [D'Agnolo] and Defendant [CCAP]." Section 12.4.1 of the

- 4 -

Diocesan Statutes governs "Disinterment" and provides as follows:

> "No disinterment from a grave or removal of a body from a Catholic cemetery may be allowed without the consent in writing of the surviving husband, wife, or next of kin. Also required is the written permission or order from the owner of the easement of the grave, or his lawful representative, and the proper documents required by civil law."

¶ 12　　　In March 2024, defendants filed their amended affirmative defenses. As relevant to the issue presented on appeal, affirmative defense No. 6 asserted immunity under the Remains Act (755 ILCS 65/45 (West 2024)).

¶ 13　　　In September 2024, D'Agnolo filed a second motion for summary determination of a major issue. In the motion, D'Agnolo asked the trial court "to determine, as a matter of law, that Defendants breached the Lot Care and Income Easement Agreement *** between [D'Agnolo] and CCAP by failing to obtain the written permission or order of [D'Agnolo] for the disinterment of the remains of David Lipari." D'Agnolo also filed a companion motion for summary judgment, asserting defendants were not immune from liability in this case under the Remains Act.

¶ 14　　　On the same date, defendants filed a cross-motion for summary judgment, or in the alternative, summary determination on a major issue. Defendants asked the trial court to determine, as a matter of law, that D'Agnolo's asserted contractual right to withhold permission to disinter Lipari's remains as the lot easement owner was invalid. Specifically, defendants asserted this right was invalid because (1) D'Agnolo "only contracted for such purported right by taking control of and burying remains she had no priority right to," (2) "the children had the lawful right to disinter, without need for involvement from the Cemetery," and (3) "applicable Illinois statutes did not require providing notice to someone with no legal rights as to the remains." Accordingly,

defendants' argument continued, they were entitled to judgment based on their affirmative defense No. 6, which asserted immunity under the Remains Act. Defendants further asserted they were entitled to summary judgment based on, *inter alia*, mutual mistake. Finally, defendants argued they were entitled to a summary determination that D'Agnolo's damages are legally limited to breach of contract remedies.

¶ 15        In October 2024, the trial court entered a written order granting D'Agnolo's motion for a summary determination of a major issue, concluding the Cemetery breached the parties' easement agreement by failing to request D'Agnolo's permission to disinter Lipari's remains. The court also granted summary judgment in favor of D'Agnolo with respect to defendants' affirmative defense No. 6, in which they asserted immunity from liability under the Remains Act for any role in carrying out the Lipari children's request to disinter Lipari's remains.

¶ 16        In November 2024, defendants filed a motion requesting the trial court certify two questions for interlocutory appeal pursuant to Illinois Supreme Court Rule 308(a) (eff. Oct. 1, 2019). In March 2025, the court entered a written order granting defendants' motion. In an unpublished May 2025 order, this court denied defendants' application for leave to appeal under Rule 308 as to the first question and granted the application as to the second question.

¶ 17                            II. ANALYSIS

¶ 18        This court granted defendants' application for leave to file an interlocutory appeal under Rule 308(a) with respect to the following certified question:

> "Whether a provision in a burial easement agreement that prohibits disinterment
> from a grave without the written permission of the easement owner conflicts with
> section 5 of the [Remains Act] (755 ILCS 65/5), section 21(5) of the [Records Act]
> (410 ILCS 535/21(5)), or section 20(a)(1)(E) of the [Crematory Act] (410 ILCS

- 6 -

18/20(a)(1)(E)), such that the provision should be deemed invalid."

On appeal, defendants argue this court should (1) answer the question in the affirmative and (2) reverse the trial court's judgment granting D'Agnolo's motion for summary determination of a major issue with respect to their affirmative defense No. 6. Specifically, defendants assert the trial court "erred in failing to hold that the contractual 'notice and withhold permission' clause was invalid and unenforceable because it directly conflicted with Illinois statutes under which [D'Agnolo] had no such rights," and furthermore, "contractually providing [D'Agnolo] the right to notice and withhold permission impermissibly impaired the rights of third-parties under those statutes."

¶ 19     In response, D'Agnolo argues this court should answer the certified question in the negative and affirm the trial court's judgment. D'Agnolo contends that the provision at issue— section 12.4.1 of the Diocesan Statutes—"supplements, rather than contradicts, the statutes by requiring an additional written consent before disinterment" and therefore does not conflict with the statutes identified in the certified question.

¶ 20                              A. Standard of Review

¶ 21     Generally, courts of appeal have jurisdiction to review only final judgments entered in the trial court, absent a statutory exception or rule of the supreme court. *Walker v. Carnival Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 133 (2008). Rule 308(a) provides one such exception, as follows:

>     "When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state

- 7 -

in writing, identifying the question of law involved. *** The Appellate Court may thereupon in its discretion allow an appeal from the order." Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019).

¶ 22 In answering a certified question, this court's role is "to answer the specific question and return the parties to the trial court without analyzing the propriety of the underlying order." *Abrams v. Oak Lawn-Hometown Middle School*, 2014 IL App (1st) 132987, ¶ 5. Accordingly, "Rule 308 'was not intended to be a mechanism for expedited review of an order that merely applies the law to the facts of a particular case,' and it does not 'permit us to review the propriety of the order entered by the lower court.' " *Combs v. Schmidt*, 2015 IL App (2d) 131053, ¶ 6 (quoting *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 17). In other words, this court is jurisdictionally and analytically limited "to considering the questions certified by the trial court *as matters of law*." (Emphasis in original.) *Id.* ¶ 7. Upon review of a certified question of law pursuant to Rule 308, this court applies a *de novo* standard of review, meaning we give no deference to the trial court's decision. *Id.* ¶ 10.

¶ 23 We note that defendants not only ask this court to answer the instant certified question in the affirmative but also to reverse the trial court's judgment. As stated above, Rule 308 does not generally permit the reviewing court to consider the propriety of the trial court's order. *Id.* ¶ 7 ("Once we resolve the legal question ***, we may not (indeed, we lack jurisdiction to) consider the propriety of the underlying order in light of the specific facts of this case."). While a reviewing court "may go beyond the scope of a certified question and consider the appropriateness of the order giving rise to the appeal" if it determines the interests of judicial economy so require, defendants have not argued such an exception is applicable here, and we find no such circumstances exist in this case. See *id.* ¶ 8. Accordingly, this court will consider only the certified

question and will not address the propriety of the underlying order.

¶ 24                                    B. Relevant Statutes

¶ 25        Defendants argue the written permission clause of section 12.4.1 of the Diocesan Statutes directly conflicts with section 5 of the Remains Act (755 ILCS 65/5 (West 2024)), section 21(5) of the Records Act (410 ILCS 535/21(5) (West 2024)), and section 20(a)(1)(E) of the Crematory Act (410 ILCS 18/20(a)(1)(E) (West 2024)).

¶ 26        Section 5 of the Remains Act provides, in relevant part, as follows:

"Right to control disposition; priority. Unless a decedent has left directions in writing for the disposition or designated an agent to direct the disposition of the decedent's remains as provided in Section 65 of the [Crematory Act] or in subsection (a) of Section 40 of this Act, the following persons, in the priority listed, have the right to control the disposition, including cremation, of the decedent's remains and are liable for the reasonable costs of the disposition:

(1) the person designated in a written instrument that satisfies the provisions of Sections 10 and 15 of this Act;

(2) any person serving as executor or legal representative of the decedent's estate and acting according to the decedent's written instructions contained in the decedent's will;

(3) the individual who was the spouse of the decedent at the time of the decedent's death;

(4) the sole surviving competent adult child of the decedent, or if there is more than one surviving competent adult child of the decedent, the majority of the surviving competent adult children ***." 755 ILCS 65/5 (West 2024).

¶ 27    Under section 21(5) of the Records Act (410 ILCS 535/21(5) (West 2024)),

"A permit for disposition of a dead human body shall be required prior to disinterment of a dead body or fetus, and when the disinterred body is to be shipped by a common carrier. *** In the case of disinterment, proper application shall include a statement providing the name and address of any surviving spouse of the deceased, or, if none, any surviving children of the deceased, or if no surviving spouse or children, a parent, brother, or sister of the deceased. The application shall indicate whether the applicant is one of these parties and, if so, whether the applicant is a surviving spouse or a surviving child. Prior to the issuance of a permit for disinterment, the local registrar shall, by certified mail, notify the surviving spouse, unless he or she is the applicant, or if there is no surviving spouse, all surviving children except for the applicant, of the application for the permit. The person or persons notified shall have 30 days from the mailing of the notice to object by obtaining an injunction enjoining the issuance of the permit. After the 30-day period has expired, the local registrar shall issue the permit unless he or she has been enjoined from doing so or there are other statutory grounds for refusal."

¶ 28    Under section 20(a)(1)(E) of the Crematory Act (410 ILCS 18/20(a)(1)(E) (West 2024)), a crematory authority shall not cremate human remains unless it has received a cremation authorization form, including, *inter alia*, the following:

"A representation that the authorizing agent does in fact have the right to authorize the cremation of the decedent, and that the authorizing agent is not aware of any living person who has a superior priority right to that of the authorizing agent, as set forth in Section 15. In the event there is another living person who has a superior

- 10 -

priority right to that of the authorizing agent, the form shall contain a representation that the authorizing agent has made all reasonable efforts to contact that person, has been unable to do so, and has no reason to believe that the person would object to the cremation of the decedent."

¶ 29                                    C. Statutory Conflict

¶ 30        Without exception, a contractual provision that violates a valid statute is void "for the reason that the law cannot enforce a contract which it prohibits." *Sibley v. Health & Hospitals' Governing Comm'n of Cook County*, 22 Ill. App. 3d 632, 637 (1974). Accordingly, "Illinois law 'provides a defense to the enforcement of a contract if that contract is illegal either as a matter of Illinois or of Federal law.' " *Swavely v. Freeway Ford Truck Sales, Inc.*, 298 Ill. App. 3d 969, 976 (1998) (quoting *American Buyers Club of Mt. Vernon, Illinois, Inc. v. Grayling*, 53 Ill. App. 3d 611, 613 (1977)).

> "Our courts apply a strict test in determining whether a contract violates public policy. [Citation.] Because public policy itself strongly favors freedom to contract, [a] *** court will not declare a contract illegal unless it *expressly* contravenes the law or a known public policy of this State. [Citation.] Agreements are not void as against public policy unless they are clearly contrary to what the constitution, statutes or court decisions have declared to be the public policy or unless they are manifestly injurious to the public welfare." (Emphasis added and internal quotation marks omitted.) *Id.* at 976-77.

Whether a contract conflicts with a statute is a matter of statutory interpretation, which is a question of law this court reviews *de novo*. *Id.* at 976. We note the question of whether a contract violates *public policy* generally involves consideration of the "peculiar facts and circumstances" of the

case. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341-42 (1989). However, because this case comes to us on interlocutory appeal via certified question under Rule 308, the scope of our review is limited to the question posed. *Abrams*, 2014 IL App (1st) 132987, ¶ 5. Accordingly, although this court cites cases involving the examination of contracts that conflict with public policy to guide our analysis, we will *only* consider whether the contractual provision in this case conflicts with the statutory provisions identified in the certified question and will *not* consider whether the contract conflicts with public policy overall based on the factual circumstances of this case.

¶ 31            In determining whether a contract conflicts with a valid statute, we find the First District's decision in *Sibley* to be instructive. In that case, the defendant county hospitals' governing commission (Commission) established a mandatory retirement program for its employees, which required employees to retire at the age of 65. *Sibley*, 22 Ill. App. 3d at 633. The mandate was incorporated into the employees' collective bargaining agreement with their employer. *Id.* at 634. After multiple employees were terminated based on their age pursuant to the agreement, they filed separate complaints seeking reinstatement, and the Cook County circuit court granted the employees' requests in all three cases. *Id.* at 634-35. The Commission appealed, and the First District affirmed. *Id.* at 638. In reaching this decision, the First District determined the mandatory retirement provision in the collective bargaining agreement directly contradicted a statutory provision under the City Civil Service Act (Ill. Rev. Stat. 1971 ch. 34, ¶ 5026) providing that a merit or career employee may not be discharged except for *cause*. *Id.* at 635. Specifically, the First District reasoned as follows:

> "The Act creating the present Commission clearly sets forth the methods by which
>
> merit service employees such as petitioners may be severed from employment. The

provision in the union contracts referring to mandatory retirement age could not affect the rights of the petitioners conferred to them under a valid statute." *Id.* at 637.

Accordingly, the First District concluded the mandatory retirement provision was invalid and unenforceable. *Id.*

¶ 32 Here, we conclude a provision in a burial easement agreement that prohibits disinterment from a grave without the written permission of the easement owner does not conflict with section 5 of the Remains Act (755 ILCS 65/5 (West 2024)), section 21(5) of the Records Act (410 ILCS 535/21(5) (West 2024)), or section 20(a)(1)(E) of the Crematory Act (410 ILCS 18/20(a)(1)(E) (West 2024)), and therefore, we answer the certified question in the negative. Upon review of these statutes, this court finds nothing therein indicating a legislative intention to prevent contracting parties from negotiating such a provision in a burial easement agreement. Specifically, while section 5 of the Remains Act provides the list of the persons with priority to control the disposition of a decedent's remains, it is completely silent as to both (1) disinterment and (2) permissible or impermissible contractual provisions in a burial easement agreement. See 755 ILCS 65/5 (West 2024). Section 21(5) of the Records Act, which details requirements for the issuance of a permit for disinterment, and section 20(a)(1)(E) of the Crematory Act, containing requirements for the authorization for cremation, are equally silent on permissible and impermissible contract provisions. See 410 ILCS 535/21(5) (West 2024) (disinterment); 410 ILCS 18/20(a)(1)(E) (West 2024) (cremation). While we agree with defendants that the Lipari children had the right to apply for the disinterment permit and the registrar was not required to notify D'Agnolo of the application, we agree with D'Agnolo that "[n]othing about that was in conflict" with the contract. Accordingly, unlike the mandatory retirement provision in *Sibley*, which violated

the statute permitting termination only for cause, there is no *express* prohibition against a cemetery requiring a burial easement owner's permission prior to disinterment. See *Swavely*, 298 Ill. App. 3d at 976-77 ("Because public policy itself strongly favors freedom to contract, [a] *** court will not declare a contract illegal unless it *expressly* contravenes the law ***." (Emphasis added and internal quotation marks omitted.)).

¶ 33　　　Moreover, there is also no indirect or tacit conflict between the contract and the aforementioned statutes. Indeed, we agree with D'Agnolo that it was entirely possible for both parties *and* the nonparty Lipari children to comply with the statutes as well as the contract provision at issue. Assuming, *arguendo*, the Lipari children had a superior right over D'Agnolo to the disposition of Lipari's remains, nothing in these statutes prevented CCAP from seeking D'Agnolo's written permission for disinterment. As D'Agnolo correctly notes, the Remains Act specifically contemplates that disputes regarding disinterment may arise among disparate interested parties. See 755 ILCS 65/50(b) (West 2024) ("*Any* dispute over a disinterment shall be resolved by a circuit court with all reasonable promptness by the court." (Emphasis added.)). In the event D'Agnolo denied permission to disinter Lipari's remains under the burial easement contract, either D'Agnolo or the Lipari children could have sought to resolve the dispute using the channels provided by the Remains Act. See *id.*

¶ 34　　　Because this court can identify no direct or indirect conflict between (1) a provision in a burial easement agreement prohibiting disinterment without the written permission of the easement owner and (2) any of the statutes identified in the instant certified question, we conclude such a provision is not invalid or unenforceable under said statutes. Accordingly, we answer the certified question in the negative. In reaching this conclusion, we emphasize this decision is limited to the scope of the certified question and this court expresses no opinion as to whether such a

- 14 -

provision is otherwise violative of public policy or unenforceable under any other legal theory not identified in the certified question.

¶ 35                                    III. CONCLUSION

¶ 36          For the reasons stated, the certified question has been answered in the negative.

¶ 37          Certified question answered.

*D'Agnolo v. Catholic Cemetery Ass'n of Peoria*, **2026 IL App (4th) 250350**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 19-L-43; the Hon. Timothy J. Cusack, Judge, presiding. |
| **Attorneys for Appellant:** | Susan J. Overbey and Alexander D. Marks, of Burke, Warren, MacKay & Serritella, P.C., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Daniel A. Wolf, of Schwartz Wolf & Bernstein LLP, of Riverwoods, for appellee. |